UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ARACELI AGUILERA,

        Plaintiff,

    v.                                                                               CAUSE NO. 3:20-CV-779 DRL

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

        Defendant.

## OPINION & ORDER

Araceli Aguilera appeals from the Social Security Commissioner's decision denying disability insurance benefits. Ms. Aguilera requests either reversal of the Commissioner's decision or remand for further consideration. Having reviewed the underlying record and the parties' arguments, the court remands the Commissioner's decision.

## BACKGROUND

Ms. Aguilera has the severe impairments of status post-laminectomy and fusion of the lumbar spine and fibromyalgia [R. 32] and non-severe impairments of cataracts and depression. Ms. Aguilera filed an application for disability on April 20, 2017, alleging a disability onset date of April 6, 2017 [R. 30, 32]. Her application was denied initially in July 2017 and again on reconsideration in December 2017 [R. 30]. She sought review.

A hearing was held before an ALJ on May 2, 2019. In a June 18, 2019 decision, the ALJ denied Ms. Aguilera's application finding that she was "not disabled" and "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" based on her "age, education, work experience, and residual functioning capacity" [R. 38, 39]. Ms. Aguilera

challenged the decision by filing a request for review with the Appeals Council. After the Council denied her request on May 18, 2020 [R. 1], she pursued this appeal.

## STANDARD

The court has authority to review the Appeal Council's decision under 42 U.S.C. § 405(g). Because the Appeal Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [the] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant

bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform work in the economy. *See Young*, 957 F.2d at 389.

Ms. Aguilera argues that the ALJ erred in determining the RFC because she did not properly evaluate evidence of Ms. Aguilera's subjective symptoms. Ms. Aguilera advances four arguments to support her claim: the ALJ erred by (1) relying solely on objective medical evidence for Ms. Aguilera's credibility determination and not building a logical bridge; (2) incorrectly evaluating the efficacy of Ms. Aguilera's medications and need for a cane; (3) finding persuasive an outdated state agency opinion and not building a logical bridge between the state agency conclusion and the ALJ's conclusion; and (4) improperly evaluating nonmedical evidence. The court takes these issues in turn.

An ALJ follows a two-step process to evaluate a claimant's subjective complaints. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529(a-b) & 416.929(a-b); SSR 16-3p. Second, once a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. 20 C.F.R. §§ 404.1529(a) & 416.929(a). To do so, the ALJ will look to the claimant's daily activities, medications, treatments, the nature and frequency of the person's attempts to obtain medical treatment, and statements by other people about their symptoms. SSR 16-3p; SSR 12-2p; *Apke v. Saul*, 817 F. Appx. 252, 257-58 (7th Cir. 2020) ("To [consider whether the record supports the severity of the symptoms the claimant alleges], the ALJ will look to the claimant's reported activity levels and treatment received.").

The court will "give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). To determine whether the credibility finding is patently wrong,

the court looks "to whether the ALJ's reasons for discrediting testimony are unreasonable or unsupported." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)).

Ms. Aguilera suffers from severe impairments: status post-laminectomy and fusion of the lumbar spine and fibromyalgia [R. 32]. Though objective medical evidence may be found for status post-laminectomy and fusion of the lumber spine, courts have recognized that often there will be no objective medical evidence signifying the presence or severity of fibromyalgia. *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (finding that fibromyalgia cannot be measured with objective tests aside from a trigger-point assessment); *Criner v. Barnhart*, 208 F. Supp.2d 937, 951 (N.D. Ill. 2002). "An 'ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it.'" *Vanprooyen*, 864 F.3d at 572 (quoting *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)).

The administrative decision concluded that Ms. Aguilera's impairments, including her fibromyalgia, could reasonably be expected to produce some symptoms [R. 35]. But when considering Ms. Aguilera's allegations in light of the full record, the ALJ determined that her symptoms and limitations were not as severe as she claimed. The administrative decision concluded that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant," citing objective medical evidence supporting this inconsistency finding [R. 35-36]. The ALJ disbelieved Ms. Aguilera's testimony because "objective medical evidence" didn't support such limitation; but a lack of medical evidence alone is an insufficient reason to discredit testimony, *see* SSR. 12-1p; *Clifford v. Apfel*, 227 F.3d 863, 871-72 (7th Cir. 2000), especially for an impairment (fibromyalgia) that often eludes such objective medical evidence, *Vanprooyen*, 864 F.3d at 572; *Apke*, 817 F. Appx. at 257-58.

Although the decision's conclusory statement in isolation might imply the ALJ improperly considered only objective medical evidence in making a credibility determination, the decision discussed Ms. Aguilera's daily activities, medication, and treatment in totality. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at [different steps]"); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) ("[W]e examine the [ALJ]'s opinion as a whole to ascertain whether [she] considered all of the relevant evidence, made the required determinations, and gave supporting reasons for [her] decisions."). Though the ALJ summarized in other sections Ms. Aguilera's daily activities, medication, and treatment, the decision offered no analysis as to how this evidence supported or contradicted Ms. Aguilera's claims about her subjective symptoms. That impedes meaningful review and precludes a finding that a logical bridge exists.

Mere description of this evidence doesn't build a logical bridge between the evidence of Ms. Aguilera's daily activities, medication, and treatment and the conclusion that her testimony was not credible alongside objective medical evidence. The administrative decision provided no analysis to show how the evidence "[was] consistent or inconsistent with the pain and limitations she claimed," *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see Tracy A. L. N. v. Saul*, 2021 U.S. Dist. LEXIS 68463 12-14 (N.D. Ind. Mar. 22, 2021); and without more, it is not evident how Ms. Aguilera's daily activities, medication, and treatment factored into the ALJ's credibility determination. The Commissioner has not persuaded the court that the error is harmless, especially considering the importance of non-objective medical evidence when evaluating a fibromyalgia impairment. This case is remanded so that the ALJ can give a reasoned assessment of Ms. Aguilera's credibility determination.

Ms. Aguilera also argues that the ALJ didn't properly evaluate evidence of medical treatment because she assumed that the medication was working and discredited her cane usage. Ms. Aguilera argues that there is no evidence that the medications were "working well" [R. 36]; however, this is

contradicted by clinical notes that state, "[Patient] reports that medications are working well. [O]ccasionally has issues." [R. 732]. Ms. Aguilera also argues that the ALJ "cherry-picked" facts about the effectiveness of her medication to support the ALJ's non-disability determination and ignored contrary facts. She says the ALJ ignored evidence that the medicine was fatiguing or sedating her. This is incorrect as the ALJ said "[t]he claimant reported Lyrica sedated her" and also added that her dose of diclofenac was reduced "due to an upset stomach" [R. 36]. The ALJ didn't commit error as she addressed relevant evidence of Ms. Aguilera's medications and needn't discuss every detail related to every factor. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) (citing *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)).

Ms. Aguilera also argues that the ALJ erred by noting that Ms. Aguilera's cane wasn't medically prescribed. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96-9p. The lack of prescription for the cane does not necessarily mean that Ms. Aguilera would not benefit from using one and may be evidence that she is suffering from substantial pain that compels its use. *See Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009) ("[G]iven her fibromyalgia and history of back surgery, [the claimant's] use of a walker, even if a doctor did not recommend it, is not on its own enough to make her testimony regarding her pain unbelievable."). In fact, SSR 96-9p doesn't mention prescriptions but requires "medical documentation." The existence of a prescription can be relevant to a finding of medical necessity, *see Shonda S. v. Berryhill*, 2019 U.S. Dist. LEXIS 49031, 12 n.7 (S.D. Ind. Mar. 25, 2019) ("the ALJ is required to consider documentation that establishes whether an ambulatory aid is medically required, which would make the presence, at least, of a prescription relevant"), even if it is not determinative of the issue, *see Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (stating that "[a]bsurdly, the [ALJ] thought it suspicious that the plaintiff uses a cane, when no physician had

6

prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist."). Because no logical bridge was built to assess how Ms. Aguilera's daily activities, medication, and treatment—including her cane and despite its non-prescription status—factored into the ALJ's credibility determination, the court cannot say they were properly considered. Remand will provide this opportunity to craft this logical bridge from factfinding to conclusion.

Ms. Aguilera's third argument is that the ALJ erred by relying on an outdated state agency report due to its completion prior to discussion of Ms. Aguilera's fibromyalgia, the spinal cord stimulator recommendation, and her cane usage. An ALJ may not "play doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotations omitted). That said, not all new evidence warrants remand, *Kemplen v. Saul*, 844 Fed. Appx. 883, 887 (7th Cir. 2021), because if "an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end," *Keys v. Berryhill*, 679 F. Appx. 477, 481 (7th Cir. 2017) (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)). The determinative question is whether the new information "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating [herself] the significance of the subsequent report or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen*, 844 Fed. Appx. at 887 (internal quotations and citations omitted); *accord Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).

The state agency decisions were made in July 2017 and again on reconsideration in December 2017. The state agency decision didn't find fibromyalgia to be a severe impairment in part because discussions of a possible diagnosis didn't occur until an appointment in March 2017 and wasn't noted as part of the state agency's record [R. 589]. At this same March 2017 appointment, the doctor also reported that Ms. Aguilera declined the spinal cord stimulator treatment [R. 586], but conversations

7

with her doctors about the spinal cord stimulator occurred back in 2016 [R. 437, 527]; therefore, theoretically this would've been reviewed by the state agency consultants though they didn't discuss the spinal cord simulator in their decision. Clinical notes in late 2017, 2018, and 2019, post-dating any evidence the state agency consultants reviewed, discuss in more detail a diagnosis of fibromyalgia [R. 694, 694-698, 741], discuss once more the spinal cord stimulator and Ms. Aguilera declining such treatment [R. 586], and her cane usage [R. 694, 698, 741].

This evidence post-dating the state agency's decision doesn't contain any significant medical treatment, sudden change in symptoms, or abnormalities that reveal "significant and new developments" that bear directly on Ms. Aguilera's functioning. *See Moreno*, 882 F.3d at 728. Ms. Aguilera says her case is like *Stage*, 812 F.3d at 1125, and *Lambert v. Berryhill*, 896 F.3d 768, 774-76 (7th Cir. 2018). In *Stage* and *Lambert*, however, a hip deformity diagnosis resulting in the need for a total hip replacement and substantial, ineffective surgical attempts respectively, indicated a significant decline and degeneration in the claimants' impairments since the state agency decisions in their cases. Unlike *Stage* and *Lambert*, Ms. Aguilera saw no sudden change in symptoms to indicate a severe decline, nor were there significant, new, or decisive findings after the state agency decision that could reasonably change the reviewing physician's opinion. *See Kemplen*, 844 Fed. Appx. at 887; *Lambert*, 896 F.3d at 774-6; *Stage*, 812 F.3d at 1125.

In fact, clinical notes post-dating the state agency's decision indicate that the "onset of symptoms began years ago" [R. 694]. Several doctors reiterated normal evaluations indicating no sudden change in Ms. Aguilera's symptoms. Clinal notes found in March 2017 "no swelling, ecchymosis, or spasms in the lumbar spine, 5/5 lower extremity strength, normal sensation, normal reflexes, and negative straight leg raising" [R. 36]. In May 2018, a doctor "noted a normal gait, no deformity in the thoracic or lumbar spine, normal range of motion of all joints, no edema in the extremities, normal sensation, normal reflexes, normal coordination, normal muscle strength, and

8

normal muscle tone" [*id*]. In July 2018, a doctor "noted normal deep tendon reflexes, normal sensation, and intact coordination" and "normal laboratory results" [*id*]. In October 2018, "she had normal sensation, negative straight leg raising, and normal reflexes" [*id*]. Conversely, in May 2018, Dr. Grannell noted that Ms. Aguilera was going downhill fairly quickly and worried she had a rare syndrome but noted "certainly I do not think fibromyalgia, although very likely has this, explains everything that is going on" [R. 735]. In February 2019, he also noted "trigger points with fibromyalgia diffusely" [R. 710] and chronic pain "most likely related socially with fibromyalgia" [R. 712]. Even still, these are not conclusive enough in light of the numerous other clinical notes and don't rise to the level of "significant and new developments" as found in *Stage* and *Lambert*, warranting remand. *See Kemplen*, 844 Fed. Appx. at 887; *Lambert*, 896 F.3d at 774; *Stage*, 812 F.3d at 1125.

Even if there were significant changes in Ms. Aguilera's health since the state agency decision, any error would be harmless. *See Parker*, 597 F.3d at 924. Despite the state agency not finding fibromyalgia to be a severe impairment, the ALJ contrarily found fibromyalgia to be a severe impairment and thoroughly considered this in the disability determination [R. 32-37]. The ALJ also considered medical notes about the spinal cord stimulator recommendation and Ms. Aguilera's cane usage [R. 35, 36]. Remand wouldn't lead to a different result in the ALJ's determination because she indeed found fibromyalgia to be a severe impairment. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [a reviewing court] to remand in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Ms. Aguilera further argues that the ALJ didn't build a logical bridge between the state agency report and her decision that Ms. Aguilera was capable of light work. The state agency physician concluded that Ms. Aguilera was only capable of sedentary work [R. 132]; and, though the ALJ found this opinion "persuasive" [R. 37], the ALJ ultimately concluded that Ms. Aguilera was capable of light

9

work [R. 34]. She argues the ALJ didn't explain why she disagreed with the state physician's decision despite finding it persuasive.

Although an ALJ doesn't need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her conclusion while ignoring the evidence that undermines it. *Terry*, 580 F.3d at 477. The ALJ "must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Here, to build an accurate and logical bridge, the ALJ must explain why she didn't accept the state agency consultant's sedentary recommendation despite concluding that "[t]he state agency determination is persuasive" [R. 37]. The administrative decision didn't do so. On remand, the ALJ must explain why she found the state agency decision to be persuasive but disagreed with the conclusion that Ms. Aguilera was only capable of sedentary work.

Ms. Aguilera's final argument centers on two reports: a field office report and a third-party function report from her stepson-in-law. Ms. Aguilera claims that the ALJ erred by not addressing a field officer's observations that Ms. Aguilera "[h]ad a hard time sitting still, had to stand and sit through out the interview. Walked very very slowly," [R. 222], and by finding the function report of Ms. Aguilera's stepson-in-law to be "minimally persuasive," [R. 37]. The ALJ didn't err in her analysis of these reports. The ALJ needn't evaluate in writing every piece of testimony and evidence submitted, *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (*per curiam*), and isn't obligated to articulate her consideration of nonmedical sources such as the field officer interviewers and Ms. Aguilera's stepson-in-law, *see* 20 C.F.R. § 404.1520c(d). Furthermore, the observations and function report reiterate and corroborate Ms. Aguilera's own testimony and doesn't constitute a separate line of evidence that the ALJ should discuss. *See Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996). No error occurred in this respect.

## CONCLUSION

Accordingly, the court GRANTS Ms. Aguilera's request for remand and REMANDS the Commissioner's decision for consideration in accordance with this opinion.

SO ORDERED.

February 10, 2022                             *s/ Damon R. Leichty*
                                              Judge, United States District Court